with the Federal Public Defender's Office. Your Honors, I'd like to reserve two minutes for rebuttal. Okay. Keep your eye on the clock. It counts down. The District Court here erred in denying the Ms. Cisneros-Rodriguez's 1326D motion to dismiss.     Their actions are, one, whether or not she was entitled to relief from deportation at the time of her removal proceedings, and two, whether a due process violation occurred. If you could, lift the mike a little bit and then speak up. Two, whether a due process violation occurred. As to the first prong, the due process violation occurred with respect to appeal and two, with respect to her right to counsel. With respect to her right to appeal, it is not clear, it is absolutely clear that she did not waive her right to appeal. In the form, the I-851 that was provided to the court in the excerpt of record, there is a notation there where the ICE agent must obtain a waiver of her 14-day right to appeal her conviction to provide for judicial review. What about the credibility determinations the district court made? What's the standard? Well, Your Honor, the standard with respect to the credibility determinations is abuse of discretion. However, the court need not resolve the credibility determinations in order to for Ms. Cisneros-Armiguez to prevail because the appellate issue is independent from the credibility determinations which were made with respect to her waiver of her right to counsel. That was a dispute between Agent Linares and Agent and Ms. Cisneros-Armiguez and her claim that she wanted to see an attorney and her claim that Agent Linares did not provide her with an opportunity to see counsel or to call a lawyer. But didn't the district court not credit her view and credited Officer Linares ' view of what happened? Well, the district court did credit Officer Linares' view. Our position is that. You know, I'm going to break in. I don't think he did. That is to say he talks about how your client's testimony wavered, but he made no finding that Officer Linares did or did not dissuade her. Instead, he says, assuming arguendo that Officer Linares did dissuade her, I nonetheless find no violation. He makes no finding of fact on that question. That is correct, Your Honor. That is part of the error here. Clearly, the court recognized under Reyes-Bonilla what the applicable case was. However, the court misapplied it and just did not apply Reyes-Bonilla. Once she came forward with some evidence that she contested whether or not she understood her right to counsel, the burden shifted to the government to then prove by clear and convincing evidence that she made a knowing and intelligent waiver of her right to counsel. It's also important, Your Honor, that in that determination, the court made several erroneous factual findings that we assert were an abuse of discretion in crediting — in not crediting Linares' testimony. Those errors were clear. One, the court found that Agent Linares' unvarying practice. Agent Linares had, by his own testimony, handled two or three of these expedited removal proceedings. The court also — So that doesn't constitute unvarying practice, is what you're saying? It does not, Your Honor. Additionally, the court conceded — You mean you're saying that as a matter of law, that finding you want us to make, that that's not — that's not an unvarying practice? Factually, it is not. It is our contention that that was an abuse of discretion. That is clear error. That is a clearly erroneous factual finding to find an unvarying practice from two or three administrative removal proceedings. Additionally, Your Honor, the court considered in determining and finding that, with respect to the right-to-counsel issue, that the length of the encounter between Agent Linares and Mr. Cernoz-Rodriguez lasted 15 or 20 minutes. I believe that was what was in the court's order. What we know from the record is that that encounter between Agent Linares and Mr. Cernoz-Rodriguez was five minutes. The administrative removal proceedings, which is the relevant portion of that encounter for consideration of whether or not she was adequately advised, was five minutes. It began at 10.05. It ended at 10.10. Those two were the factual errors. Additionally, the court considered a subsequent record of sworn statement where she — So you're saying that those factual findings by the court are to be reviewed for an abuse of discretion and that the controverting factors or facts are so clear that he abused the discretion? Is that the standard that you're applying? Yes, it is, Your Honor. In this instance, the court considered the record of sworn statement. The record of sworn statement was the purposes of whether or not ICE was going to charge her subsequently for illegal reentry. That had nothing to do with the administrative removal proceedings. At that point, if the court looks at the timing of that, I believe it's at 10.20. The administrative removal proceedings is over at that point. It has concluded. But to prevail here — Can I interrupt? You say that the district judge says in your recollection 20 minutes. Can you point to me where he says that? Because I'm reading the order. I'm on page ER-6, where the district judge writes, both Agent Linares and defendant agree that their meeting that day was not lengthy. From the testimony, it appears it took about 10 to 15 minutes for Agent Linares to go over the forms and for her to sign them. You said 20 minutes. Where's that? Your Honor, I misspoke. The court is correct. It is. I'm looking at that same page, and the court did find that it took 10 to 15 minutes. However, in that— Wait, wait, wait, wait. Then it says the first form was signed at 10 o'clock and the last interaction appears to be at 10.30. Is that the same proceeding? That is the same proceeding, Your Honor. Well, is that the 20 minutes? The error, Your Honor, is the court's consideration of what is the relevant portion of that encounter between Ms. Cisneros-Rodriguez and Agent Linares. The relevant portion is the 10.05 when he serves the I-200 warrant for arrests of an alien, and 10.10 when Ms. Cisneros completes the I-851. At that point, he conclusively determines that she is subject to administrative removal from the United States. Anything that happens subsequent to that, any discussions of counsel after that point are not relevant to determination of whether or not she had validly waived her right to counsel prior to that point. For purposes of granting and making this conviction here, the two independent grounds that we assert here, which I want to really stress, are, one, the waiver of a right to appeal. That is separate and independent from her waiver of a right to counsel, which has to do with the credibility determinations. Now, the waiver of the right to appeal, it is clear. All she needs to do is to establish that that is that due process violation. 8 U.S.C. 1228b3 provides that the Attorney General may not execute an expedited removal order until 14 calendar days have passed from the date that such order was issued unless waived by the alien or in order that the alien may have an opportunity to apply for judicial review. That did not occur here. She was removed from the United States the next day on the 21st. She did not waive her right to appeal. So separate and apart from the issues of the credibility determinations or even the notice issue, the notice issue is somewhat of a red herring because the notice issue goes to deal with her parent eligibility for relief. Once she establishes that that due process violation recurred to her right to appeal and that she establishes that she had a plausible basis for relief from deportation in the form of a U visa, then the Court must vacate this conviction. Now, on the issue of whether she waived her right to appeal, the judge did find that all of the forms were explained to her in her native language, in Spanish, right? That is correct. So that's relevant, isn't it, on whether or not she waived her right to appeal? Well, there's no indication from that the government met its burden to establish by clear and convincing evidence from this record before the Court where on the I-851 there is no box. That box checked indicating that she has been advised of her right to appeal. It is two prongs, Your Honor, we assert. One, whether or not she understood she had a right to appeal, and then second, whether she waived it. So here there's no indication that she waived it. So then at the time, though, we look at the facts at the time it occurred. She says one thing and the agent says another. And the Court did make credibility determinations overall, didn't he? Yes, Your Honor. The Court did make credibility determinations as to the right to counsel issue. The Court did not address any of that. You know, again, I have to say no. The district judge made no credibility finding with respect to whether he believed her or believed Agent Linares with respect to whether or not he sought to dissuade her from seeking counsel. He assumes arguendo. That is correct, Your Honor. He does. I just corrected you twice on that point. It's an important point. It is an important point, Your Honor. And the Court is quite correct in that, that the judge assumed without deciding at this point he made no determination as to whose testimony he was going to credit. I think he did make a credibility determination about some, whether he believed her testimony or not. However, he did not in the end make a determination necessary to either grant or deny the motion, and that was error. Could I ask you to turn to the plausibility of entitlement to a U visa? Your Honor, I see I have 30 minutes. I see. Yes. Yes. Whether or not she had a plausible basis for relief from deportation is found in the U visa. One, she, the relevant. Could I just maybe cut to the chase of my? Sure. How are we supposed to make that determination given the length of her criminal history? To be blunt, that's my problem with this part of your case. Well, Your Honor, we provided a declaration from our expert, Ms. Bernadette Connolly. Ms. Bernadette Connolly, what we know from a U visa is that U visa is a very forgiving grant. Right. And so, and I appreciate that. So again, just to, because I've read your brief and I appreciate and I think I understand the argument, but what's the standard? How would we put ourselves in the shoes to really be able to make that determination about whether this individual would have obtained a U visa, what value the government would have put on in this case for her cooperation? Your Honor, the court would need to consider INA 101A15U. One, whether she suffered physical and mental abuse as a result of a qualifying crime. She did. She was a victim of extortion. She was traumatized by that event. Two, whether she was, satisfies the helpfulness prong, whether she was helpful to law enforcement. She was. She had just testified in Santa Clara County Superior Court before the district attorney. Three, whether she had information about that crime. That prong is also satisfied. It is our position under Rehavaca that it is probably this. She was facially eligible for a U visa. I'll grant you that she was facially eligible for purposes of this question. My question is a little different. What standard should we apply to figure out whether or not, you know, how likely was it that she was going to obtain the visa? Plausible. Whether she had plausible relief from deportation in this instance. And what standard do we apply to make that determination? Your Honor, I would submit in here whether, based on her facially eligibility and referring to Rehavaca in that she was facially eligible for that visa, and I would apply the standard in Rehavaca that it is probable that there was some evidence and that would be the standard. As long as there is some evidence of her eligibility, then she would qualify for a U visa. Is it relevant at all that she didn't, she wasn't, she was denied the visa? How is that, how does that fit into the standard? Well, Your Honor. And is that something we should consider or are we to ignore that? Your Honor, I think the Court can ignore that because of. I mean, as a matter of law, are we to ignore it? Well, for determination of that prong of the analysis, it is at the time of her, at the time of these removal proceedings, whether she was. So what's the difference? Well, the difference being that her subsequent denial of that U visa is something that, that should be considered for purposes of whether she had, was facially eligible for relief from deportation in 2010. A subsequent denial in 2012 should not be considered for determining whether or not she was, had plausible relief from deportation back then. Additionally, the circumstances, we do not know whether or not they may have reconsidered or granted her that U visa had she not been convicted of this crime. Let me, let me alter your course here for a moment. What about the statute? What about 1228 that requires once an individual is placed in expedited proceedings? Now, that really is the end of it. They can only challenge it on three bases, none of which apply here. Now, that argument was made before the district court. For some reason, the district court didn't rely on it. But it seems to me the case law provides that that's mandatory, that once there, there is no course but for her to challenge at that time. That is, make the three potential challenges that she could have made under the statute. And the other possibility, of course, is that I think Officer Lanier said that if he had known that she had been a victim, he had known that she had cooperated, he would have provided that information to the general counsel. But there's no law that I know that indicates that the general counsel would have been required and that he or she abused the discretion by going forward with the expedited proceedings. Well, there's two points, Your Honor. One, under 1228A, the Court is correct in noting that it does indicate basis for relief that the Attorney General can grant in the Attorney General's discretion. It's our position here that a U visa is granted under the discretion of the Department of the Secretary of the Department of Homeland Security. Yes, I understand that. But you don't get there, do you? You don't get there once that decision is made. It's mandatory under 1228. It says shall. Well, Your Honor, what we point to is that ICE had its own procedure, had its own practices and procedures for dealing with individuals who were facially eligible for U visas. Where in the statute does it allow for that exception? Well, Your Honor, what we would point to is the, not any provision in a particular statute, but a provision for purposes of considering whether she had plausible relief from deportation, the various avenues in which she might have remained in the United States, including ICE's own practices and procedures, including Agent Linares' testimony, that had he known, he would have communicated that information. Well, Your Honor, you know, I think one answer you're not yet giving is Officer Linares is in a position to recommend whether or not she should be placed in expedited administrative proceedings. That is his. And had he known what he later comes to know by the time this suit's brought, it's entirely possible he would not have placed her in administrative, because he is in a position to recommend yes or no, as his testimony makes clear. That is precisely our point, Your Honor. So why didn't you give me that answer the first time? Well, Your Honor, I am giving it to Your Honor now, in that it is clear that Officer Linares did have the, did have discretion to take her out of 238 proceedings and put her in 240 proceedings in front of an IJ. Let me ask you about that, though. It doesn't, the statute doesn't say that Linares had the discretion. He could have recommended, but the discretion really was in the hands of the general counsel, right, according to the statute? That's your argument. She lost her chance. She lost her chance for that consideration to be given. She did. That is, that is our, that is our position. And my question is, how do we know what would have happened? And I think we've already discussed that before, but it does require a bit of a crystal ball. It, Your Honor, it. And I've taken you way over your time. I'm sorry, but. Why don't we hear from the government? Thank you, Your Honor. And then we'll give you a chance to respond. Good morning, Your Honors. May it please the Court. My name is Ann Voights, and I represent the government. This Court should affirm defendant's conviction. The district court correctly denied the motion to dismiss because her expedited removal was not fundamentally unfair. In order for a defendant to succeed on her collateral attack on the underlying removal, she has to first prove that she exhausted her remedies, second, show that she was improperly denied her right to judicial review, and third, show that the entry of the order was fundamentally unfair. And defendant can meet none of those standards. You know, if it's true that Officer Lanara successfully dissuaded her from seeking counsel, then what? Then the question is whether there was, in fact, prejudice from that. Right. And the standard for prejudice is whether it's plausible that she could have received a U visa? That is correct. Is that the question? Yeah. So it is, it's not simply a theoretical possibility, nor is she required to demonstrate that it was absolutely certain. So how do we make that determination? She had what I'm paraphrasing as a long criminal history, and then she had some other pretty compelling factors. She had assisted the government. She's got a couple of young children. She's married to a U.S. citizen. How do we make that determination? In this case, we make the determination based on two things. First, the fact that she was in expedited removal, and as the district court found, there was no credible evidence to suggest that she had told them that she was a victim of a crime or that she had an extortion case or that she was intending to apply for a U visa. So because she was That's a different question. My point is, if they had known all that, how do we know what would have happened? So now your premise is different because now you're taking away some of the factors. But if all the factors are in the soup and they're How do we sort that out at this point? I think we look to the criteria for issuing a U visa. And in order to qualify for a U visa, first off, eligibility doesn't equal entitlement. So even if she meets the statutory factors, she still has to show that she's admissible and that she can get a waiver. And a waiver is only available if in the agency's discretion they conclude that it's in the public or national interest. Right. And we might be able to figure out what we three think about that. But I'm not so sure we're good at figuring out what the government would have done had they known all of the had they had all the information and made the determination. What are your thoughts on that? My thoughts are that she would not have qualified. In fact, because at age 26, she fell into criminal history category 5. She had an extraordinarily significant criminal history at a very young age. And that is one of the factors that the agency looks to to consider whether it's appropriate to waive inadmissibility. The part that I have the toughest time weighing is the value the government would place on her cooperation in this particular case. That's hard for us to reconstruct after the fact. Correct. We can see that she did get a law enforcement certificate that's required by statute. And that she did testify at the preliminary hearing. So we agree on that point that she did, in fact, serve as a witness. Right. But in some cases, some criminal prosecutions, the government might be much more interested in getting that kind of cooperation than others. It might be, to be blunt to me, it might be much more valuable for the government in some prosecutions than in other types of prosecutions. And it strikes me that we're not in a particularly good position to figure out where this falls on that spectrum. I think that's a fair statement. In this case, we have the fact that she testified at the preliminary hearing, but she was not the only witness who testified. That's interesting. I was going to ask you about that. Did she – she actually was sentenced to one year in prison, then she was placed on probation. Did she have a plea agreement of some sort so that the cooperation was of advantage to her, so that the government would have come forward and actually done something to assist her in getting the U visa? Is there a – I couldn't find that in the record. Having searched, I couldn't find anything that would show that, which I thought was unusual, because generally, my understanding is that the United States government does come forward and does assist with the U visa. In this case, it was – first off, to clarify, it was the DA who – Yes, I mean – excuse me. I mean the prosecutor. Certainly. Yes. The court looks at the timeline, and I agree that some of this is not clear from the record. Well, if it's not clear from the record, then don't tell me about it, because I was – but just based upon the record, what do you have here in terms of what was done on her behalf by the prosecutor? So here what we have is she served as a witness. She was represented by counsel at the preliminary – she had her own counsel at the preliminary hearing. And my understanding is her conviction was already final at that point, and she acknowledged, in fact, in her testimony at the preliminary hearing that she had pled guilty, and that at her plea colloquy on cross, she admitted that she had said that she was pleading guilty freely and voluntarily and without the intention of benefiting anyone else. So there was no retroactive attempt on this record by anyone from the prosecutor's office to assist her with a U visa? That's correct. Okay. So she just – her testimony was just at the preliminary hearing, you're telling me now? Yes. After the preliminary hearing, when the Court found that there was enough evidence to go forward, then the defendant in the extortion case pled guilty. Well, what we seem to be – I definitely am struggling with it. It sounds like my colleagues are, too, is how do we retroactively determine plausibility? In looking at the record, I couldn't find, let's say, a standard, what did she do, that the Court applies retroactively to determine if she would have, if she had a plausibility standard at the time. I'm aware of the fact that it was denied. Is there anything in the record to indicate why it was denied? There is not, Your Honor. And it was denied in circumstances different from the circumstances in which she would have made the application in the first instance. It's denied after she is removed and after she reenters and is convicted of illegal reentry. So the circumstances of the denial are different from the circumstances in which the application would have been made had it been made at the time that we're now speaking of. Is that right? They are different, but we would submit not in a material way. I understand your argument, but I want to say that they're different. Whether they're material, I can't tell. Do we know generally how easy U visas are to get? Like what's the general grant rate? So the statistics are not part of the record. It is, there is a declaration by the defendant's expert, by an immigration lawyer, that it is relatively easy. But I would submit that there's nothing. They're notoriously easy to get. You know that and I know that. But we would submit that in this case, with this sort of criminal history, it is not. But how do we know? That's the problem, breaking it down. It's not an apples-to-apples comparison. And it comes back to the length of her criminal history, which I think is significant for my part, and the difficulty in trying to assess just how valuable her cooperation was, because that's going to vary also on a case-by-case basis. As does the severity of the harm and there are other criteria that need to be considered. Right. But if I could submit to the court, the court only reaches that question if it concludes that there was, in fact, a violation of her rights. That's right. And we would submit that the court shouldn't get there because there was none. Here's my problem, and we have no fact-finding on what to me is the critical question, and that is to say Judge Jensen, a very careful judge, has a hearing which many judges would not have had. He takes testimony. For two days. For two days. And at the end, he is unwilling to make a factual finding as to whether or not Officer Linares dissuaded her. He assumes, for purposes of his ruling, he assumes argumento that he did dissuade her, but says that complies with due process because based on what he knew, the lawyer would not have been helpful. How can that be right? Meaning, based on what he knew, but of course the job of a lawyer is to learn about the facts of the case, and Cisneros knows, it turns out, very little. And the defendant would have told the lawyer the things that Cisneros didn't know that might have made a difference. So how can that ruling be right, that based on what he knew, Cisneros did not violate due process by saying you don't need a lawyer? First, we would submit that even though the Court didn't reach that particular issue, this Court can, on the record, support the finding that he did not, in fact, dissuade her. I'm sorry. I didn't hear you. I apologize. I would submit that first, although the district court didn't reach the issue, this Court can. It can affirm on any basis in the record. Well, you know, but if I'm giving the record here, I've got uncontradicted testimony from her that he dissuaded her. He can't remember a damn thing. What he said was he said that he, when someone told him that they wanted to seek counsel, he would stop the interview and he would let them call counsel. So he testified about his typical practice, his routine practice, as opposed to independent recollection. Is that fair? That is fair. Is there a case law in this circuit that the practice is something that the court on appeals can take into consideration? I think it certainly can. It certainly was something that the district court did. The district court, in fact, credited his statements about his unvarying practice. Sure. Sure. And I can believe you. On the other hand, this is, according to his own testimony, only the second or the third time in which he had done this. That is to say, he was newly in this job after having been demoted for bad behavior in his previous job, some of which included false testimony and included having the personal property of deportees in his personal safe in his office. So unvarying practice from someone who has just been demoted to the job he's now performing, and this is only the second or third time he's done it, that's not the best unvarying practice for your purpose. First, we agree that the testimony reflects that he was relatively new at that job. But I believe a fair reading of his testimony was that he was not referring only to his practice up to this particular hearing. Sure. No, I agree with you on that point. Okay. Thank you. What's the government's single strongest argument? I think, first, it's twofold. First, that there was no due process violation. If the court looks, there isn't simply Agent Linares' testimony. There are also the forms. There's also the fact that defendant's own testimony was so inconsistent and implausible as to whether she in fact wanted a lawyer, what she had been told about a lawyer, and all of that was consistent with the idea that she voluntarily waived her right to seek counsel and that she waived her right. Well, where is it inconsistent that ‑‑ where does she have inconsistent testimony about whether she wants a lawyer? She's inconsistent about the ways in which she expresses the desire. But does she ever say, I didn't want a lawyer? So what she said was that she said she variously told them that she thought that he told her a lawyer wouldn't help her, so she didn't ask for one, and that she testified that she wasn't given the sheet of available legal counsel. And, again, the district court credited Linares' testimony over hers that she in fact had been provided with that list. Didn't she also say that her family might get her a lawyer? She varied between saying that her family either was exploring getting her a lawyer or would explore getting her a lawyer. That's the part that troubled me, and I wonder if you want an opportunity to respond, because that seems to indicate to me that she's interested in getting counsel. Certainly. The question would just be, you know, from where. Right. So how does that fall into place? So I think if the court looks at the record, it indicates that she was in fact ‑‑ this was not her first contact with immigration. Immigration had in fact contacted her significantly earlier, had an interview with her where they confirmed that she was an alien, that she had committed aggravated felonies. They then confirmed ‑‑ they asked her if she had any petitions pending, and they ran an independent check to see if there were petitions that were pending. In the time that lapsed between then and there, she never sought, at least the record doesn't reflect her seeking counsel, or in the record that she would have ‑‑ that she in fact voices, because she both waived it in the I-851 and in the subsequent record of sworn statement. And although defense counsel would like to, I think, divide the two, I think it is significant that given two opportunities to assert a right to counsel or to waive it, in both instances she did waive it. But you were asked for your best argument, and why didn't you argue that the statute, once it ‑‑ once she is placed in expedited proceedings, is over? That is correct. I think what we're looking at is what happens at the time. The district court didn't actually reach that issue, and I think ‑‑ but because the statutory language is clear, under the statute, under 1228, she is not eligible for any form of discretionary relief, either the U‑Visa or a waiver of the grounds of eligibility and admissibility that would allow her to apply for a U‑Visa. We have some factual issues here, and we've discussed them about what happened and how that came about and what the general counsel could have done and Linares actually said, well, if I had known this information, I would have submitted it to the general counsel. Does the general counsel then have unlimited discretion to determine whether or not she should be placed in expedited proceedings? I believe, looking at the items, yes. The general ‑‑ there is a recommendation in the documents that were submitted that where there is actually a pending U‑Visa petition, that someone not be deported unless there's been a determination that they aren't prima facie eligible. But that is applying to some facts that aren't actually applicable here. Because in this case, she didn't have a pending U‑Visa. But, Hedge, let me make sure I understand your answer. If she had had a pending application for a U‑Visa, she would not have been in these expedited administered proceedings? My understanding is she ‑‑ it is unclear, I think. But it is possible that she might not have been. The one part that is in the record is you have Agent Linares' testimony that he would have thought it was relevant. I've got a question. I realize we're taking both of you over time, but it turns out there's enough complication in this case that we've misallocated the ten minutes. So we'll just keep going until we think we're finished. I'm now on page 4. It's both page 4 and ER 4, the district judge's order. I'm in the first full paragraph and the second sentence. I'm basically in the middle of the page. The sentence that begins, the district counsel concurred with Linares' assessment. Yes. Are you with me? Okay. Let me just read the sentence. The district counsel concurred with Linares' assessment that because Isneros Rodriguez had been convicted of an aggravated felony, parent, a fact which defendant does not contest, that it was appropriate to process her deportation in an expedited administrative removal proceeding. I'm concerned about the parenthetical phrase, a fact which defendant does not contest, and as I parse the language it's a little unclear to me what Judge Jensen means as to what the defendant does or does not contest. That is to say, if the defendant does not contest that the district counsel concurred with Linares' assessment, I think that's absolutely right. But it appears to me from the record in front of Judge Jensen that the defendant did, in fact, contest whether she had been convicted of an aggravated felony. Do you read the declaration of the expert in the same way I do? I read it actually somewhat differently. If looking at the declaration, I apologize, one moment, I think a fair reading of it. I mean, also while you're looking there, did she at one time contest it but then withdrew it? I believe. In answering that question, can you also consider that fact? Because I thought I saw something like that in the record, too, and this is an important question. Certainly in her sentencing paper she conceded that she had been convicted of not just one but two aggravated felonies. She did attempt to sort of argue that nonetheless she should be entitled to a lesser sentence because she attributed some of the responsibility for those to Mona Lisa Rodriguez. But certainly by the time of sentencing she had conceded that there were two aggravated felonies. And if I could point out, it appears that in the declaration, first it doesn't appear that the expert was aware of the defendant's full criminal history. She refers to only one conviction. And what she says is not that it would not have qualified, but she said she would have investigated whether she could challenge it. And our current case law is in some flux at the moment, as you may or may not know, on aggravated felonies. Is it possible that what seemed to have been counted as aggravated felonies under our current law might not be? That's not an issue that the defendant has raised here. And we do believe that there are aggravated felonies. Because our law is in flux. But it's, I think, entirely possible that those things that looked as though they might be aggravated felonies then would not, under current law, be aggravated felonies. I'd submit that because the defendant hasn't raised this on appeal, it's raised it, I believe, only in a footnote in the reply. But what I'm after here is I'm trying to figure out what use a lawyer would have been had she sought a lawyer. And it's clear that the lawyer would at least have investigated whether or not this really was or these really were aggravated felonies that would have placed her and had the possibility of placing her in the administrative expedited proceeding. The lawyer would have figured out, oh, you know, you're at least facially eligible for a U visa. And who knows what else the lawyer might have done. But because she never had the lawyer, this never happened. I think if I could, I think the crux of the defense's argument was really about the entitlement to U visa relief. And that was the crux of the prejudice. And so I think that is the core of it. And because she was in expedited removal proceedings, she wasn't eligible. And so while she could potentially file a separate case. Scalia, is she going to get put in these proceedings? Correct. But I think the question of waiver focuses on what happens at the time of the hearing. And so whether there's a due process violation focuses on what happened at the proceedings. And as the district court found, there was no reason to think in this case that the lawyer would have done the good of this. Oh, I think that's absolutely right. There's no reason to think that Linares or Santaros, either one of them knew. Right. But the question is, was it proper advice, assuming it was given to her, listen, a lawyer is not going to do you any good. It turns out I think a lawyer would have at least plausibly done her the good of saying, listen, you look facially eligible for a U visa. But what would have happened had she applied for it, I think based on what you've said, is it plausible that had the U visa been applied for, she would not have been placed in the administrative expedited proceedings? And then we're devastated with the question of is it plausible she would have been granted? And that's the question. And we're struggling with that question, as you can tell. Well, I think if I could address your question. First, I think it turns on what she's told at the hearing. And so once she's already. What hearing now? I'm sorry. When she's in the hearing with Linares. That's sort of the 10 to 15-minute discussion. That hearing? That's correct. And if I could actually address the timing issue very briefly, I'd just like to point out that I don't think that there was clear error in this case. What the court was clearly looking at was the contact with her. The forms themselves are not particularly long. They were explained to her in Spanish. The rights that are listed are not particularly numerous. There are essentially five. And he testified that he explained those rights in Spanish to her. She signed the form. She waived it. And we think that that waiver was valid. We think that even if this court disagrees, that there's no prejudice. I've got one last question, which I think this is showing me instinct for the capillaries. Do we know if she was dressed in brown when she met with Linares? I don't think we do, Your Honor. Because she's dressed in brown later. And dressed in brown in that jail appears to me you're in protective custody. So I'm trying to figure out if she's dressed in brown, is there something Linares should have said, oh, wait a minute, why is she in protective custody? It turns out she's in protective custody directly related to the criteria that she would have been advancing for the U visa. I understand. And I believe there was testimony before the court that when she was transferred to ICE custody, she would have gone in the clothing that she was booked in. Do you think that's in the record, counsel? I believe so. I will look for it. And if, with the court's permission, I'd submit a 28-J confirming or not confirming that fact. Thank you. If I might. Okay. Thank you. Thank you. Now, we apologize for turning a 10-minute argument into a 20-minute argument. Thank you, Your Honor. We've taken you over, but we've taken the government far over. Let's put two minutes on the clock and see what happens. Thank you, Your Honor. Your Honor, if I could address a couple issues. I think the court is concerned about the issue of whether or not the standard for determining whether or not she was eligible for this U visa and whether it was likely that it would be granted. I think it's not a determination of whether it certainly would be granted. Under Rhea Vaca, we would look to the ---- It's not about eligibility. It's about plausibility. Plausibility. Sorry, Your Honor. It's a big difference. Yes. Yes. So she's eligible. We do believe it was plausible that there was some evidence. Why? Why, counsel? Because ---- Your best shot. Our best shot here, Your Honor, is the helpfulness prong, that she had been traumatized by this event, that at that time she had not suffered a conviction for illegal reentry. Additionally, her counsel would have been able to argue and point out that, in fact, these aggravated felony convictions, the one for the possession for sale, was some way related to her victimization, that these individuals had encountered her from her testimony at trial, where the evidence or hearing had encountered her while she was out of custody and had forced her to sell drugs. And that her victimization continued while she was in custody, and that they were trying to force her to take responsibility for this offense. Additionally, Your Honor is questioned about whether statistics are relevant. They are relevant. In our 28J letter ---- And what do we know from statistics that are in the record? Well, Your Honor, we submitted in our 28J letter that the statistics in 2009 showed that ICE received 6,835 petitions, under which, of those, 5,825 were approved. And can we take judicial notice of that? I submit you can, Your Honor, that the Court can consider those statistics, because at the time those were the statistics for this is a very generous grant. Right, but we don't have any idea, looking at the right subset, I haven't heard anybody tell me that we have any statistic that tells us how likely, how plausible it is for someone with an aggravated felony to get a U visa. Well, Your Honor, we can consider that there are procedures in the U visa application for granting people a U visa who are in removal proceedings. It can be assumed that these individuals who are helpful to law enforcement ---- They could be in removal proceedings for any number of reasons. They could, Your Honor. But the idea that individuals who are helpful to law enforcement may at not one time may have suffered an aggravated felony conviction is not as unremarkable. I'm just making the unremarkable point that I can't tell from that global statistic how plausible it is she would have been able to get a U visa, because I don't know how many people who have prior aggravated felonies get U visas. That's all. In the language of the rule that allows her some consideration is that she has been helpful or she might be helpful. So with that in mind, what are the undisputed facts that we are to look at here that would establish on this record what her ---- how helpful she was? And then from that point, it has to be of public or national interest. Certainly if she was helpful or she was about to be helpful, it's of public interest. But what is it that we are to look at? And then taking that in conjunction with her criminal history and also her family situation, which is also relevant to the issue of plausibility. Well, Your Honor, her helpfulness is clear in her ---- she having testified just, I believe, months before she was put into custody. And that was at a preliminary hearing, though. It was at a preliminary hearing. And not at a trial. And that testimony helped obtain a conviction for individuals who were attempting to force an individual to perjure herself to take responsibility. Okay. I just want to make sure, too, and I'm sorry to interrupt. That is clear in the record. That's undisputed. The facts are undisputed that she was helpful. Yes. But even though she only testified in the preliminary hearing, what else? The ---- we provided the U visa certification showing that she had been certified by law enforcement, that she had been helpful in connection with that prosecution. I believe that U visa certification conclusively establishes the helpfulness prong of that, that she needs to establish for purposes of U visa. Additionally, the Court should consider those other factors that were present. One, her United States citizen husband, her United States citizen children, their disabilities that the USCIS would have had to consider at that time, and she would have been given a waiver from her ineligibility based on having an aggravated felony conviction. And additionally, Your Honor, the Court is ---- well, I've lost my train of thought, but I'll catch it again. The Court should consider ICE's own policies, ICE's own policies and procedures in effect at that time for dealing with individuals who were eligible or facially eligible for a U visa. Had she had a lawyer, that lawyer could have done tremendous work to get her out of these expedited proceedings. The government seeks to argue that she was in this impossible box, that she could not get out of it. She absolutely could get out of it. She could get before an immigration judge, make her case. That lawyer would have come in there and said, you're eligible for a U visa. You're a victim of what? What happened to you? This happened to you while you were in here? I will file this U visa for you. She did have a lawyer. She did have a lawyer, but it's your position. That was a criminal lawyer and not a civil lawyer. Is that the problem? She was represented by Ms. Bernanke during her criminal proceedings. But her criminal lawyer obviously did not have any information or wasn't competent to advise her about what eligibility she had for relief from deportation. And it's important to also note that even at the conclusion of these removal proceedings, she still thought she was going to go see a lawyer. She still thought that she was going to go before a judge and make her case. That shows the degree to which she was confused about what had exactly just happened and that she hadn't. I'm not sure that's consistent with her testimony, because as I read her testimony, she says, Agent Linares said, I better sign right now because if I want to get on that airplane with my voluntary departure and the airplane is ready to leave, I've got to sign right now. Didn't she say that? There's some confusion as that. She was still at the end of that still believing that she was going to see a lawyer and that she knew she was going to be leaving the country. That is true. And she was only given an opportunity to make a phone call after this was all over. And the relevant portion here is those 5 minutes. Anything that happens after that point is not relevant to the consideration of whether or not she made a knowing and intelligent waiver of a right to counsel as well as a right to appeal. And given Raya Vaca, we would submit on that, that she is, that the Court should look to Raya Vaca to determine whether or not she did present some evidence. It is not her, what she doesn't have to meet is a certainty that she would have been granted this U visa. But she had a shot. She had a good chance. Okay. I think we got it. Thank you, Your Honor. Thank both sides for lengthy arguments. And I think we might finally be beginning to understand this case. Appreciate it.
judges: Silver, Fletcher, Christen